UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-205-B-W |
| | ) | |
| KENNETH THOMPSON | ) | |

**ORDER DENYING MOTION TO DISMISS**

Charged with violating the Sex Offender Registration and Notification Act (SORNA), Kenneth Thompson moves to dismiss the Indictment; the Court denies the motion. It concludes that SORNA does not violate the non-delegation doctrine, the Commerce Clause, the freedom to travel, the Due Process Clause, the *Ex Post Facto* Clause, and that venue is proper in the District of Maine.

**I.     BACKGROUND**

On November 12, 2008, a federal grand jury indicted Kenneth Thompson for failure to register as a sex offender as required by SORNA, in violation of 18 U.S.C. § 2250(a). *Indictment* (Docket # 1). The Indictment alleges:

> That beginning on or about August 31, 2007, and continuing until on or about April 18, 2008, in the District of Maine and elsewhere, [Kenneth Thompson] who had been convicted of a state sex offense and a federal child pornography offense in 2001 and was, as a result of those convictions, required to register under the Sex Offender Registration and Notification Act, traveled in interstate commerce and knowingly failed to register and update his registration as required by the [SORNA].

*Id.*

On December 8, 2008, Mr. Thompson moved to dismiss the Indictment on six grounds: (1) the non-delegation doctrine; (2) the Commerce Clause; (3) the freedom to travel; (4) the Due

Process Clause; (5) the *Ex Post Facto* Clause[1]; and, (6) improper venue. *Mot. to Dismiss Indictment* (Docket # 13) (*Def.'s Mot.*). The Government responded on January 9, 2009. *Mem. in Opp'n to Def.'s Mot. to Dismiss* (Docket # 17) (*Gov't's Opp'n*). Mr. Thompson replied on January 20, 2009. *Mem. in Reply to Gov't's Resp. to Mot. to Dismiss* (Docket # 19) (*Def.'s Reply*).

## II.   DISCUSSION

### A.   The Motion to Dismiss

In returning an indictment, a grand jury is carrying out a constitutional function enshrined in the Bill of Rights. U.S. CONST. amend. V (stating that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury"). Accordingly, unlike civil actions, a criminal action, particularly one initiated by an indictment, is not generally subject to dispositive motion practice. *United States v. DiTomasso*, 552 F. Supp. 2d 233, 238 (D.R.I. 2008) (stating that "[a] motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather is directed only toward the sufficiency of the indictment to charge an offense"). An indictment "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Vega Molina*, 407 F.3d 511, 527 (1st Cir. 2005).

Rule 12(b)(2) allows a party to raise "by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue," but the phrase "that the court can determine without a trial of the general issue" imposes a significant constraint. Fed. R.

---

[1] Mr. Thompson initially asserted a Double Jeopardy Clause challenge to SORNA. *See Mot. to Dismiss Indictment* at 16 (Docket # 13). Later, however, he acknowledged that the challenge was better understood as raising an *Ex Post Facto* Clause defense. *See Mem. in Reply to Gov't's Resp. to Mot. to Dismiss* at 5-6 (Docket # 19).

2

Crim. P. 12(b)(2). A motion to dismiss an indictment tests "its sufficiency to charge an offense," *United States v. Sampson*, 371 U.S. 75, 79 (1962); thus, for example, a defendant may challenge defects in the institution of the prosecution or defects in the indictment itself. *See* Fed. R. Crim. P. 12(b)(3)(A), (B). But, in ruling on a motion to dismiss, the "allegations of the indictment must be taken as true." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Bohai Trading Co.*, 45 F.3d 577, 578 n.1 (1st Cir. 1995).

### B. Mr. Thompson's Motion

#### 1. Non-Delegation Doctrine

The Court resolved the non-delegation issue in *United States v. Stevens*, 578 F. Supp. 2d 172, 182-84 (D. Me. 2008), and finds no cause to revisit it here.

#### 2. Commerce Clause

The Court largely addressed Mr. Thompson's Commerce Clause challenges in *Stevens*, 578 F. Supp. 2d at 184-85, and the analysis still applies. He raises one new issue: whether the prior federal conviction basis for a § 2250(a) conviction violates the Commerce Clause.[2]

---

[2] Section 2250(a) states:

> In general. Whoever - -
>
> > (1) is required to register under the Sex Offender Registration and Notification Act;
> >
> > (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> >
> > (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> >
> > (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

Section 2250(a) establishes two means to satisfy the second element of the offense: under § 2250(a)(2)(A), status as a sex offender "by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States," or, under § 2250(a)(2)(B), travel "in interstate or foreign commerce" or entering, leaving, or residing in "Indian country." Mr. Thomas's challenge focuses on § 2250(a)(2)(A), arguing that because § 2250(a)(2)(A) does not require an element of interstate travel or foreign commerce, the statute lacks a jurisdictional basis. *Def.'s Mot.* at 6.[3]

The Court is aware of no circuit court decisions on point. However, numerous district courts have rejected Defendant's argument. The Western District of Texas recently explained:

> [D]efendants indicted under § 2250(a)(2)(A) are held accountable for violations of federal—not state—law, which falls squarely within Congress' exclusive jurisdiction. As state laws are not implicated, Congress' Commerce Clause authority, granting Congress the power 'to regulate Commerce with foreign Nations, and among the several States' does not represent the underlying principle through which Congress drafted § 2250(a)(2)(A). . . . In short, Defendant does not have standing to raise an attack on Commerce Clause grounds as he was convicted under federal law.

*United States v. Santana*, No. EP-08-CR-978-DB, 2008 U.S. Dist. LEXIS 106463, at *9-10 (W.D. Tex. Oct. 31, 2008) (citation omitted); *see also United States v. Reeder*, No. EP-08-CR-977-DB, 2008 U.S. Dist. LEXIS 105968, at *9-10 (W.D. Tex. Oct. 31, 2008) (same); *United States v. Yelloweagle*, No. 08-cr-00364-WYD, 2008 U.S. Dist. LEXIS 105479, at *3-4 (D. Colo. Dec. 23, 2008) ("Like the other district courts that my research has revealed to have addressed the issue, I find that § 2250(a)(2)(A) raises no Commerce Clause implications."); *United States*

---

[3] The Government argues that Mr. Thompson lacks standing to raise his § 2250(a)(2)(A) challenge, noting that the Indictment, which alleges a prior state sex offense and interstate travel, sets forth sufficient facts to proceed against Mr. Thompson under § 2250(a)(2)(B). *Gov't's Opp'n* at 2. However, because the Indictment leaves open the possibility of a § 2250(a)(2)(A) theory, it is appropriate for Mr. Thompson, as he has done, to lodge his attacks on all avenues of prosecution in a single, consolidated motion. *See* F. R. Crim. P. 12(b)(3) ("The following must be raised before trial: . . . a motion alleging a defect in the indictment or information.").

*v. Senogles*, 570 F. Supp. 2d 1134, 1147 (D. Minn. 2008) ("[T]he provisions of Section 2250(a)(2)(A) do not raise Commerce Clause concerns, as they require that the defendant have a previous conviction under Federal law."); *United States v. David*, No. 1:08CR11, 2008 U.S. Dist. LEXIS 38613, at *25 n.11 (W.D.N.C. May 12, 2008) ("The only other category of individuals who may be prosecuted under SORNA are those who have been convicted of a sex offense under federal law.  18 U.S.C. § 2250(a)(2)(A).  This category, of course, has no Commerce Clause implications.").  The Court agrees with its fellow district courts that the Commerce Clause is not implicated in a prosecution under § 2250(a)(2)(A).

        **3.**     **Freedom to Travel**

The Court addressed and resolved the same freedom to travel issues in *Stevens*, 578 F. Supp. 2d at 185-86, which it adopts in full herein.

        **4.**     **Due Process**

Mr. Thompson argues that SORNA violates the Due Process Clause of the Fifth Amendment by punishing the failure to comply with non-existent requirements.  Although presented in the context of a failure to state a claim, the Court rejected this argument in *Stevens*. *Id.* at 179-82.  In *Stevens*, a criminal defendant claimed that the Government failed to allege an offense against him because neither Maine nor Rhode Island had fully implemented SORNA.  *Id.* The Court noted that, under SORNA, a sex offender must "'register, and keep the registration current, in each jurisdiction where [he] resides.'" *Id.* at 179 (quoting 42 U.S.C. § 16913(a)).  The Court observed that Maine law imposes a legal obligation to register as a sex offender.  *Id.* (citing 34-A M.R.S.A. § 11223).  Finally, the Court concluded that "[a] straightforward reading of the language of § 16913(a) suggests that, since he was required to register in Rhode Island and Maine, the jurisdictions where he was residing, he was also required by SORNA to do so." *Id.*

5

In other words, SORNA imposes real, ongoing registration requirements on sex offenders; the Indictment alleges that Mr. Thompson failed to meet these requirements. The Court finds no Due Process violation.

### 5. *Ex Post Facto* Clause

Mr. Thompson next argues that his federal prosecution constitutes unconstitutional retroactive punishment. Citing a recent Maine district court decision, *State v. Letalien*, No. CR-07-3082 (Me. Dist. Ct. 8, And., June 4, 2008), he contends that Maine's SORNA statute violates the *Ex Post Facto* Clause, and he concludes that his prosecution under the federal SORNA, which he argues is premised upon his failure to comply with the Maine SORNA, is itself unconstitutional.

The United States Supreme Court recently upheld Alaska's SORNA law against a challenge that it constituted retroactive punishment forbidden by the *Ex Post Facto* Clause. *Smith v. Doe*, 538 U.S. 84 (2003). In so doing, *Smith* applied the two-step method for analyzing the constitutionality of such statutes:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Id.* at 92 (internal citations and quotations omitted). Applying this framework to Alaska's SORNA statute, the Supreme Court held that the statute was civil in nature, and that the effects of the law did not negate this characterization. *Id.* at 105-06.

Prior to *Smith*, the Maine Supreme Judicial Court, sitting as the Law Court, upheld the Maine SORNA statute in the face of an *ex post facto* challenge. *See State v. Haskell*, 2001 ME

6

154, 784 A.2d 4. Since *Haskell*, the Maine Legislature has substantially amended the Maine SORNA statute, and in *Doe v. Dist. Attorney*, the Law Court left open the possibility that the post-*Haskell* amendments "make the effects of [the Maine] SORNA so punitive as to negate its civil intent." *Doe v. Dist. Attorney*, 2007 ME 139, ¶¶ 25 & 31, 932 A.2d 552, 560-61. Shortly thereafter, a Maine district court found "by the 'clearest proof' that despite the civil intent, the effect of [the Maine] SORNA is so punitive as to overcome its civil characterization." *Letalien*, No. CR-07-3082 at 17. The State appealed to the Law Court; oral argument is scheduled for February 10, 2009.[4]

Mr. Thompson's argument is premised on the view that the Maine SORNA is unconstitutional. This issue, however, is precisely the question before the Law Court. The Court concludes that the better course is to abstain from reaching a question of the interpretation of a state statute that is currently before the Law Court. Whether denominated *Younger*[5], *Pullman*[6], *Colorado River*[7], or *Burford*[8] abstention, the fundamental principle is that the federal courts should ordinarily refrain from making definitive interpretations regarding the constitutionality of state statutes when there is litigation pending in state court addressing the same issue.

### 6. Venue

Finally, Mr. Thompson claims the prosecution has been brought in the wrong jurisdiction, alleging that "no actionable activity occurred in Maine, but rather all acts constituting the instant charged offense occurred in New Mexico." *Def.'s Mot.* at 17. In *United States v. Salinas*, the First Circuit described the proper process:

---

[4] *See* http://www.courts.state.me.us/maine_courts/supreme/oral_arguments.shtml (last visited January 28, 2009).
[5] *Younger v. Harris*, 401 U.S. 37 (1971).
[6] *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).
[7] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).
[8] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

> The Supreme Court has formulated a set of guidelines for determining criminal venue. If the statute under which the defendant is charged contains a specific venue provision, that provision must be honored (assuming, of course, that it satisfies the constitutional minima). *See Travis v. United States*, 364 U.S. 631, 635, 5 L. Ed. 2d 340, 81 S. Ct. 358 (1961); *Armour Packing Co. v. United States*, 209 U.S. 56, 73-75, 52 L. Ed. 681, 28 S. Ct. 428 (1908). Otherwise, the 'locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it.' *United States v. Anderson*, 328 U.S. 699, 703, 90 L. Ed. 1529, 66 S. Ct. 1213 (1946). In performing this tamisage, a court must begin by 'identifying the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.' *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279, 143 L. Ed. 2d 388, 119 S. Ct. 1239 (1999). If the crime consists of distinct parts occurring in different places, venue is proper where any part of the crime occurred. *See United States v. Lombardo*, 241 U.S. 73, 77, 60 L. Ed. 897, 36 S. Ct. 508 (1916); [*United States v. Scott*, 270 F.3d 30, 35 (1st Cir. 2001)]. Although the focus of this test is on the conduct comprising the offense, the Supreme Court has rejected the so-called 'verb test' -- the notion that action verbs reflected in the text of the statute should be 'the sole consideration in identifying the conduct that constitutes an offense.' *Rodriguez-Moreno*, 526 U.S. at 280. Rather, an inquiring court should peer at the conduct elements comprising the crime through a wider-angled lens. *See id.* at 280 & n.4.

*Salinas*, 373 F.3d 161, 164 (1st Cir. 2004). Applying this analysis, venue is proper in the District of Maine. The statute does not contain a venue provision, so the court turns to the "text of the statute." *Salinas*, 373 F.3d at 165. In relevant part, the statute requires that the person be (1) "required to register under [SORNA]; (2) either be "a sex offender as defined for purposes of [SORNA]" or travel "in interstate or foreign commerce"; and, (3) knowingly fail "to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250(a). Here, the Indictment charges that Mr. Thompson "traveled in interstate commerce and knowingly failed to register and update his registration as required by [SORNA]." *Indictment*. As explained by the Government, the charge is that when Mr. Thompson traveled in interstate commerce, he failed to update his registration in Maine, the state he left, and failed to register in New Mexico, the state he traveled to. *Gov't's Opp'n* at 6. Under the general venue statute, 18 U.S.C. § 3237(a), "any offense against the United States begun in one district and completed in another, or committed in

8

more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued or completed." Thus, the Court agrees with the Government, that "[b]ecause Defendant is charged with traveling in interstate commerce, then failing to register in New Mexico and update his registration in Maine, venue is proper in both Maine and New Mexico." *Gov't's Opp'n* at 7.

Faced with similar arguments, several courts have found venue proper where, as is alleged here, the prosecution is brought in the jurisdiction where a defendant was previously registered as a sex offender. *See United States v. Howell*, No. 08-2126, No. 08-2171, 2009 U.S. App. LEXIS 541, at *21-22 (8th Cir. Jan. 13, 2009) (applying the general venue statute and holding that that "the Northern District of Iowa is a proper venue because [the defendant's] SORNA violation commenced in the Northern District of Iowa")[9]; *United States v. Cochran*, No. CR-08-18-RAW, 2008 U.S. Dist. LEXIS 41588, at *5-6 (E.D. Okla. May 23, 2008) (concluding that because "Defendant left Oklahoma, where he was registered, Oklahoma is one of the jurisdictions involved, and thus suit in Oklahoma is proper"); *United States v. Tong*, No. CR-08-20-RAW, 2008 U.S. Dist. LEXIS 41589, at *6-7 (E.D. Okla. May 23, 2008) (same); *United States v. Roberts*, No. 6:07-CR-70031, 2007 U.S. Dist. LEXIS 54646, at *6-9 (W.D. Va. July 27, 2007) (finding that Virginia was "involved" in the sense used by SORNA and therefore venue was proper because the defendant at one time resided in Virginia and, due to his failure to re-register in North Carolina, Virginia remained the defendant's nominal residence according to sex offender registries).

---

[9] Mr. Thompson seeks to distinguish *Howell* on the basis that, under Iowa law, the defendant in *Howell* was required to notify the Iowa sex offender registry upon his move to another state. *Def.'s Reply* at 7-8. At this stage, it is unclear whether Maine law imposed obligations on Mr. Thompson that he failed to meet. Further, the Court is unconvinced that *Howell* turned on the Iowa state law requirements alone.

Judge Moon's analysis in *Roberts* is helpful.  Under 42 U.S.C. § 16913(c), a sex offender is required to keep his registration current and "not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry."  The jurisdiction in which the sex offender has so appeared is required to "immediately provide that information to all other jurisdictions in which the offender is required to register."  *Id.*  The defendant in *Roberts* argued that this language establishes that venue is proper only in the state to which the defendant traveled, since SORNA requires registration in "at least one," which, as Judge Moon concludes, "cannot plausibly be read as 'both.'"  *Roberts*, No. 6:07-CR-70031, 2007 U.S. Dist. LEXIS 54646, at *7.

This did not end the analysis, however.  Judge Moon turned to whether the original state remained a "jurisdiction involved pursuant to subsection (a)"; he noted that subsection (a) requires registration in any jurisdiction where the offender resides, is employed, or goes to school.  *Id.* at *8-9.  When the defendant in *Roberts* moved from one jurisdiction to another and failed to register within three days, his "nominal residence" for SORNA purposes remained the state he had left.  Thus, Judge Moon concluded the original state was "involved" in the sense used by SORNA and prosecution in the original state satisfied the venue requirements.  *Id.* at *9; *see also Cochran*, No. CR-08-18-RAW, 2008 U.S. Dist. LEXIS 41588, at *5-6 ("Given that Defendant left Oklahoma, where he was registered, Oklahoma is one of the jurisdictions involved, and thus suit in Oklahoma is proper.").

The Court is satisfied that Maine is "involved" for SORNA purposes, that venue is proper, and that no evidentiary hearing is necessary.

### III.  CONCLUSION

The Court DENIES the Defendant's Motion to Dismiss the Indictment (Docket # 13).

SO ORDERED.

/s/ John A. Woodcock, Jr.  
JOHN A. WOODCOCK, JR.  
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 29th day of January, 2009